# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

DEVONTE B. HARRIS,

    Plaintiff,

v.

KEITH HIGGINS, *et al.*,

    Defendants.

Case No. 2:08-cv-01711-LDG

**ORDER**

Plaintiff Devonte B. Harris is a prisoner proceeding pro se pursuant to 42 U.S.C. § 1983. The defendants move for summary judgment (#31) as to Harris' First, Second, and Fifth claims.[1] They argue that Harris failed to exhaust his administrative remedies as to these claims. As relevant to this motion, Harris has alleged the following in his Second Amended Complaint: First Claim - that defendants Larry Lesane, Corey Rasmussen and

---

[1] The Court previously dismissed Harris' Third Claim that his due process rights were violated on January 4, 2006. The defendants have indicated they are not seeking summary judgment as to Harris' Fourth Claim, in which he alleges that Defendant Higgins used excessive force against him on January 4, 2006. In addition, the defendants have not sought summary judgment as to Harris' Sixth Claim–that Brown and Chastain denied him basic human needs on February 13, 2006–because the relevant defendants were not served and have not appeared in this action.

Joel Carlson used excessive force against him on March 29, 2005; Second Claim - that Lesane and defendants G. Stratton, K.M. Chastain, and B. Forsterer retaliated against him on April 6, 2005; and Fifth Claim - that defendants J. G. Watcher, Matt Gallagher and Jose Villanueva used excessive force against him on February 13, 2006, and that Watcher and Defendant T. Brown retaliated against him on that same date. Harris has filed an opposition (#34) to the motion for summary judgment.

### Motion for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Arango*, 670 F.3d at 992.

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting *Anderson*, 477 U.S. at 252).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Of

course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.*, at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.,* at 325.  Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however, will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  That is, the opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

Exhaustion

A prisoner must exhaust his administrative remedies before filing suit:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Compliance with §1997e(a) is mandatory:

> Once within the discretion of the district court, exhausting in cases covered by §1997e(a) is now mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."
> [W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

*Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

As the Supreme Court explained in *Booth*, when Congress amended section 1997e(a) in 1995, "the amendments eliminated . . . the discretion to dispense with administrative exhaustion." *Booth*, 532 U.S. at 739. The Court also "stress[ed] the point . . . that [it] will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Id*. at 741 n.6. "This inference is, to say the least, also consistent with Congress's elimination of the requirement that administrative procedures must satisfy certain 'minimum acceptable standards' of fairness and effectiveness before inmates can be required to exhaust them, and the elimination of the courts' discretion to excuse exhaustion when it would not be 'appropriate and in the interests of justice.'" *Id* . at 740 n.5. In enacting the PLRA, Congress sought "to curtail frivolous prisoners' suits and to minimize the costs–which are borne by taxpayers–associated with those suits." *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999).

4

The United States Supreme Court clarified the exhaustion requirement under the PLRA in *Woodford v. Ngo*, 548 U.S. 81 (2006).  In *Woodford*, the Supreme Court reversed the Ninth Circuit Court of Appeals and held that an inmate must properly exhaust administrative remedies, including complying with the administrative time requirements, before the inmate can file suit.  Simply put, *Woodford* holds that inmates who fail to timely comply with the prison's administrative grievance procedures and complete every step in the administrative appeal process are barred from suing on their civil rights claims.  *Id.* at 95-96.  More recently, the Supreme Court clarified the exhaustion rule further, holding that it is the prisoner's observance of the state's regulations and procedures concerning its administrative appeals process, and not the PLRA itself, that determines whether a prisoner has properly exhausted administrative remedies.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

### The California Prison Appeals System

The California Code of Regulations, Title 15, §3084.1(a), Right to Appeal, states: "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy, which they can demonstrate as having an adverse effect upon their welfare."  The appeals office for each prison receives all inmate grievances (known as appeals or CDCR Form 602) submitted by inmates at the institutional level.

In 2005 and 2006, there were four levels of appeal review: one informal and three formal levels.  Cal. Code of Regs. tit.15, §3084.5 (2006).  In order to be timely, the appeal had to be submitted within fifteen working days of the action or decision being appealed.  Cal. Code of Regs. tit.15, §3084.6(c) (2006).  During the informal level of review the appellant and staff involved in the action or decision attempt to resolve the grievance informally.  If the inmate was not satisfied with the informal level response, he could submit the appeal for formal review.  The first formal level of review was addressed at the Division

Head level or his/her designee. *Id.* If the inmate was not satisfied with the first formal-level response, he could submit it for a second level of review. *Id*. The second level of review was conducted by the Institution Head or his/her designee. If the inmate was not satisfied with the second-level response, he could elevate the appeal to the third level of review, conducted by the Chief of the Inmate Appeals Branch in Sacramento, California. *Id*. This constituted the CDCR Director's decision on an appeal, and completed the exhaustion process. *Id*. The inmate was required to file his appeal at the next level within 15 working days of the decision at the lower level. *Id*.

      Appeals that met the requirements under Title 15, including providing required supporting documents and being submitted within certain time constraints, were assigned for response at the appropriate level. If an appeal did not meet the requirements for processing (which can include a failure to provide required supportive documents, submitting duplicative appeals, or a failure to meet time constraints, the appeal would be "screened out" and returned to the inmate with written instructions on how to correct the deficiencies, if possible.

    <u>Analysis</u>

      <u>First Claim</u>. The defendants have shown that Harris filed a second-level appeal and received a decision on that appeal on May 15, 2005. Harris did not file a third-level appeal within fifteen days, but instead filed the appeal on August 11, 2005. The third-level appeal was screened-out as untimely.

      Harris asserts that his appeal was timely and the screen-out for being untimely was improper. Harris states that, in the decision of his second-level appeal, the reviewer stated the matter was being referred for a Use of Force Review "and if he wasn't satisfied with review, Harris could appeal to the third level." Harris asserts that the Use of Force Review (which determined Harris' allegations were unfounded) was not issued until July 25, 2005.

As such, he argues that he complied with the second-level review decision by filing his appeal within fifteen days of the Use of Force Review decision.

Harris' argument, and declaration, are contrary to the text of the second-level response, which (consistent with California's regulations) provided that he could appeal the second-level response "within fifteen days of receipt of this response." Accordingly, summary judgment is appropriate as to Harris' First Claim.

Second Claim. The defendants have shown that Harris did not submit any appeals asserting that either Lesane or Forester retaliated against him on April 6, 2005,

Harris asserts that he did file an appeal of his retaliation claim as part of his excessive force claim against Lesane. Harris argues that, "on August 4, 2005, in his excessive force appeal," he explained the retaliation that was in response to his excessive force claim.

As noted by the defendants, Harris' own response concedes that he did not raise his claim in an initial appeal, but included it as part of a second-level appeal of a different matter. On this basis, alone, summary judgment is appropriate. The defendants have further noted that Harris failed to file a timely third-level appeal of the other matter. Accordingly, summary judgment is appropriate as to Harris' Second Claim.

Fifth Claim. The defendants have shown that Harris did not submit any appeals asserting that Villanueva used excessive force against him on February 13, 2006.

Harris asserts that he appealed his excessive force claim against Villanueva, but that his third-level appeal was improperly screened-out as untimely without first determining whether there was a credible explanation for the delay in filing the appeal. More specifically, he asserts that he received a response to his second-level appeal after he was transferred to another prison and placed in administrative segregation. He states that the earliest he could have submitted an appeal to the third level was on November 4, 2006. As

such, he argues that the third-level screen-out as untimely was inappropriate for failing to consider whether he had a credible explanation for the delay in filing the appeal.

The defendants have shown that the second-level appeal was sent to Harris on June 30, 2006. They further point out that Harris does not declare when he received the second-level response, nor does he declare that he submitted his third-level appeal within fifteen days. Harris' vague assertion that the earliest he could have filed his third-level appeal was on November 4, 2006, is insufficient to establish that he filed the third-level appeal within fifteen days of receiving his second-level decision. Accordingly, summary judgment is appropriate as to his Fifth Claim.

Therefore, for good cause shown,

THE COURT **ORDERS** that Defendants' Motion for Summary Judgment (#31) as to Devonte Harris' First, Second, and Fifth Claims is GRANTED.

DATED this __17__ day of December, 2015.

_____
Lloyd D. George
United States District Judge